## The Steam-Ship Oder.

*(District Court, E. D. New York.   July 20, 1881.)*

1. Collision—Negligence.

   A collision occurred in mid-ocean, to the eastward of the Grand Banks, in about latitude 40 degrees, 1 minute, north; longitude 38 degrees, 9 minutes, west.   Both vessels were bound to New York.   One, a bark, was sailing at a speed of four or five knots an hour, close-hauled upon the wind, on a course north, one-half west; the other, a steam-ship, was steaming at a speed of between 11 and 12 knots an hour, on a course west by north, half west.   A light west by north breeze was blowing.   *Held*, that, as there is no question in the case as to the existence of a green light displayed from the starboard side of the bark, nor as to the brightness of the night being sufficient to render such light visible in time to avoid the collision, and as the question whether the steamer was approaching the bark from aft in a course that rendered it impossible for her to see the green light of the bark sooner than she did must be answered in the negative, the inference is irresistible that the cause of the collision was the failure on the part of the steam-ship to keep a proper lookout.

2. Lighted Torch—Rev. St. § 4234.

   No fault can be found with the bark for not displaying a torch over her stern towards the steamer seen approaching, if the display of an additional light from the bark would have been of no avail for want of a proper lookout on the steamer

3. Witness.

   A mistake in regard to time and distance, in cases of this description, does not necessarily discredit a witness.

*Hill, Wing & Shoudy,* for libellant.

*Shipman, Barlow & Larocque,* for claimant.

Benedict, D. J.   This action is brought to recover the sum of $22,-500, as damages for the sinking of the Norwegian bark Collector by the steam-ship Oder, on the night of June 7, 1879.   The place of the collision was mid-ocean, to the eastward of the Grand Banks, in about latitude 40 degrees, 1 minute, north; longitude 38 degrees, 9 minutes, west.   Both the vessels were bound to New York.   The bark was sailing at the speed of four or five knots an hour, close-hauled upon the wind, with the proper lights burning brightly.   The Oder, according to her answer, was steaming at a speed of between 11 and 12 knots an hour, on a course west by north, half west.   A light west by north breeze was blowing, the sea was not heavy, and the night, from 12 o'clock until the collision, which occurred at 32 minutes past midnight, was overcast, and the stars obscured, and streaks of light haze alternated with clear air.

On the part of the bark it is contended that the steamer was sailing without a proper lookout, and for that reason she did not discover the bark until the vessels were near each other, and made no proper effort to avoid the bark.

On the part of the steamer it is contended that the bark had no light which could by any possibility have been discovered by those on board of the steamer sooner than it was discovered; that the bark was discovered at the earliest possible moment, and everything then possible to be done by those on the Oder to avoid the collision was promptly done:

"That no sound or signal was given by those on board the bark, but she was suffered to glide on in silence and darkness, a comparatively small and dark object, wholly invisible to a vessel approaching her from abaft, as said steamship was approaching."

Upon these pleadings it may be taken as true that the steamer was sailing at the speed of from 11 to 12 knots an hour; that her course was west by north, half west, and that the wind was west by north. With such a wind the bark, bound as she was to New York, was, of course, sailing on the wind, and so stands the proof. The course of the bark, therefore, as shown by the direction of the wind, stated in the answer, was from north to north by west. It is proved by several witnesses to have been north, half west.

The courses of the respective vessels are thus fixed beyond dispute, and they are the controlling facts decisive of the case; for if the speed of the steamer was from 11 to 12 knots, and that of the bark was from four to five knots, and if the steamer was sailing W. by N. $\frac{1}{2}$ W., and the bark N. $\frac{1}{2}$ W., the green light of the bark, which, according to the undisputed testimony, was so arranged as to show two points abaft the beam, must have been visible to the steamer a considerable period of time before it was discovered by those in charge of the steamer, and in abundant time to enable the steamer to avoid the bark. There is no question here in regard to the existence of a green light properly displayed from the starboard side of the bark and burning, for the light was seen by many persons on the deck of the steamer before the collision. Nor is there any question that the night was bright enough to render the bark's light visible in time to avoid collision, for the evidence from the steamer is that the night was such as to make the steamer's side lights visible three miles, and those of the bark two miles away. The only question is whether the steamer was, as the answer asserts, approaching the bark from aft in a course that rendered it impossible for her to see the green light of the bark sooner than she did. That she was not so sailing appears by the course of the steamer as she herself gives it, and the direction of the wind as she herself states it, taken in connection with the speed of the respective vessels and the undoubted

fact that the bark was bound to the westward, close upon the wind. These facts conclusively show that the green light of the bark was visible to the steamer as she was approaching, and the inference is irresistible, therefore, that the cause of the collision was the failure to keep a proper lookout on board the steamer.

This conclusion, compelled as it is by the conceded facts already mentioned, is greatly confirmed by the evidence given by the officers and crew of the steamer as to what occurred on board their vessel. Two men, as it appears, were stationed forward on the steamer to look out. They stood at the stem, the stay being between them. One was charged with the duty of looking out on the starboard side; the other took care of the port side. The bark was on the steamer's port side. The man whose duty it was to look out in that direction, so far as appears, never reported or saw the bark's light. He is not called as a witness, nor any satisfactory excuse given for his absence. The other lookout left his post forward at 30 minutes past 12, and went aft as far as the bridge to report to the officer on the bridge that the lights of the steamer were burning brightly. The collision, according to the answer, occurred at 32 minutes past 12. During some part of the two minutes immediately preceding the collision, therefore, the steamer was sailing substantially without a lookout. The starboard lookout says that he had returned to his post before the bark's light was seen, but he confesses that he did not see the light until after the whistle was blown, and the whistle was not blown until after the light was seen by the second officer on the bridge, and the steamer's wheel had been ordered hard a-port. This testimony sufficiently, I think, accounts for the fact that the bark approached so near the steamer without being seen by the lookouts.

There is also testimony which may be considered as accounting for the failure of the second officer on the bridge to see the bark sooner than he did, for it appears that the captain had left orders to be called if the weather changed. After half-past 12, the second officer concluded that it was proper to inform the master, and he called the fourth officer to the bridge. The fourth officer came upon the bridge, and was directed by the second officer to inform the master that the weather had changed. The fourth officer replied, "It is nice and clear; you can see the horizon still." The second officer looked and saw the horizon too, and at the same moment, as he says, "I saw the flash of the light." The occupation of the officer in charge of the deck in scanning the heavens, and discussing with the fourth

officer the condition of the weather, may well have been the reason why his eyes did not sooner catch the bark's light.

To the argument based upon the courses and speed of the respective vessels, as the same are admitted or proved beyond a doubt, it is answered, in behalf of the steamer, that this theory is inconsistent with the testimony of those on board the bark in regard to seeing the steamer's green light as she approached. Manifestly, however, the green light of the steamer was visible to those on board the bark at some time before the collision. A mistake in the statements of the witnesses for the bark in respect to seeing the green light of the steamer is, therefore, a mistake of time and distance; and a mistake in regard to time and distance, in cases of this description, does not necessarily discredit a witness. Besides, there is in this case testimony drawn from witnesses produced by the steamer tending to show that the ranges of the side lights of the steamer crossed each other inside the steamer's stern, in which case it would be possible for those on the bark to see the steamer's green light when approaching at a considerable distance on the course given by the answer.

Stress has been laid by the advocate for the steamer upon language used by the crew of the bark in speaking of the steamer, as indicating that the steamer was approaching from aft, and when she could not see the side lights of the bark. But the expressions "angling forward," "up on our side," "almost along-side," "right along-side," "standing forward," and the like, do not appear to me to be inconsistent with the description of the courses of the vessels as fixed by the answer, the conceded direction of the wind and the weather, and speed of the two vessels. Besides, it must be remembered that the expressions referred to are those used by the interpreter to give his idea of what the Norwegian phrases, used by the witnesses, were intended to mean, and cannot be too implicitly relied on. So, too, importance is attached by the claimants to the line drawn by the seamen of the bark to represent the course of the steamer when first seen by them. That line may very well represent the direction of the blow given by the steamer after the wheel of the steamer had been put hard a-port, and that of the bark hard a-starboard; but it cannot truly represent the relative bearing of the courses of the respective vessels as they were approaching each other, for the course marked for the steamer being, as the answer states, west by north, half west, would make the course of the bark about northwest,—an impossible course with the wind as given by the steamer.

In regard to the averment of the libel that shortly after the mast-head light of the steamer was seen, all three of the lights were presented to view, and she was coming for the stern part of the starboard quarter of the bark, I do not see that it is necessarily inconsistent with the fact that prior to the time when the bark was seen by the steamer the steamer was approaching within the range of the bark's green light. But if this allegation of the libel be irreconcilable with the statement in the answer, the steamer surely has no cause to complain if the case be determined upon a theory in harmony with the statements of the answer rather than those of the libel.

The conclusion I have arrived at, that the bark's green light was visible to those on the steamer at a sufficient distance to enable the steamer to avoid the bark, and that the want of a proper and constant lookout on board the steamer was the cause of her omission to see the bark's light as soon as it became visible, and her consequent failure to avoid the bark, renders it unnecessary to determine whether there was a further fault on the part of the steamer in putting her helm hard a-port at the instant of seeing the light, upon the assumption that the light was that of a steamer passing them to port, instead of first determining the character of the light.

The views already expressed, of course, dispose of the point taken against the bark that she was in fault for not displaying a light over her stem towards the steamer seen to be approaching. If, as I have found, the want of a proper and constant lookout on the steamer was the only reason why the bark's green light was not seen in time to avoid her, the display of an additional light from the bark would have been of no avail; and, moreover, as I have found, the respective courses of the vessels were such as to render the bark's green light visible to the steamer; and if, as the witnesses for the steamer said, the night was such as to enable that light to be seen at a distance of two miles, there was nothing to lead those on board the bark to suppose the light they were displaying to the steamer would not be seen by those on board the steamer, and they were justified, therefore, in assuming that the collision would be avoided by timely action on the part of the steamer.

I find no fault, therefore, on the part of the bark, and I am of the opinion that the steamer is wholly responsible for the sinking of the bark. The libellant must, therefore, have a decree for the amount of his damages, with an order of reference to ascertain the amount.